**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARMAC, LLC<br>d/b/a MCDONOUGH MARINE SERVICE** | **CIVIL ACTION NO:** |
| | **DISTRICT JUDGE<br>HON.** |
| **VERSUS** | |
| **WCC ENERGY GROUP LLC** | **MAGISTRATE JUDGE<br>HON.** |

**VERIFIED COMPLAINT FOR DAMAGES AND**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

1.

Plaintiff MARMAC, LLC, doing business as McDonough Marine Service, is a Louisiana limited liability company with its principal place of business in Metairie, Louisiana. McDonough owns the inland deck barge MCD 355.

2.

Defendant WCC Energy Group LLC is a Louisiana limited liability company domiciled at 3838 North Causeway Boulevard, Suite 2880, Metairie, Louisiana 70002. Its manager and registered agent is William Weidner.

3.

Subject matter jurisdiction is appropriate in this Court because the bareboat charter of a vessel is a maritime contract, giving rise to jurisdiction under 28 U.S.C. § 1333.

4.

McDonough designates this as an admiralty case within the meaning of Fed. R. Civ. P. 9(h).

5.

Personal jurisdiction and venue are appropriate in this Court because the contract that forms

the subject matter of this suit calls for venue and jurisdiction in this Court, and because WCC is domiciled in Jefferson Parish, within this district.

6.

McDonough and WCC are parties to a Master Bareboat Charter Agreement effective March 29, 2023, under which WCC charters McDonough barges by individual charter order.

7.

By Charter Order No. PRJ2900, ordered by Mr. Weidner on March 30, 2023 and signed by him as WCC's CEO on May 1, 2023, WCC bareboat chartered the MCD 355, an inland deck barge of about 120 by 30 by 7 feet and 214 gross tons.

8.

The charter order fixed delivery on March 1, 2023 at WCC's dock in Venice, Louisiana; redelivery to McDonough's Venice fleet; hire of $100 per day, billed monthly in advance; and an open term. It made WCC responsible for hull insurance valued at $300,000 with McDonough as loss payee, protection and indemnity insurance of $5,000,000, and pollution insurance of $5,000,000, each naming McDonough as additional assured with a waiver of subrogation. It incorporated McDonough's Barge Wear and Tear Addendum, which requires that oil, grease, and hydraulic drippings be cleaned so that no sheen remains.

9.

Under the master agreement, hire is payable monthly and continues until the barge is redelivered in the condition in which it was delivered, ordinary wear and tear excepted. Unpaid hire bears interest at 1.5% per month beginning 30 days after its due date. Articles 2(B), 4(B), 4(D).

10.

McDonough delivered the MCD 355, which was at all times staunch, fit, and seaworthy. WCC moved it to WCC's wells in Breton Sound, Plaquemines Parish, and connected it to WCC's platform and wellhead by hoses, flowlines, and an electrical cable.

11.

WCC has paid none of the hire invoiced in 2026. Invoices dated January 1 through August 1, 2026 total $26,851.50; with the invoices since, WCC owes in excess of this amount in hire as of the date of this complaint. WCC has not disputed any of them, and has ignored repeated amicable demand.

12.

WCC never furnished certificates showing the required insurance, including the required pollution insurance, despite McDonough's repeated requests, and on information and belief never procured it.

13.

Article 14 of the master agreement provides that if WCC fails to pay hire for more than 10 business days after it is due, or fails to perform any other obligation, McDonough may terminate the charter, retake the barge wherever found without legal process, and recover from WCC the cost of transporting the barge and restoring its condition.

14.

McDonough gave WCC notice of default repeatedly. On July 14, 2026, McDonough notified WCC that it was exercising its right to retake the barge and asked what was required to disconnect it from WCC's platform and equipment. WCC did not answer.

15.

On September 23, 2026, WCC, through counsel, said it was trying to raise funds to buy the barge and would have an answer in one to two weeks. It did not. WCC then promised McDonough an offer on Monday, October 19, 2026. None came.

16.

On October 22, 2026, McDonough told WCC to have the barge ready for redelivery.

17.

On October 27, 2026, McDonough's contractor, Madere & Sons Marine Rental, arrived on location and found the barge still connected to WCC's platform by piping and hoses. McDonough anticipates being charged for Madere's time and other expenses involved with the voyage.

18.

On October 28, 2026, WCC, through counsel, represented that the hoses were not under pressure and could be removed with an impact driver, that the electrical line was unpowered and could be cut, and that the barge could then be taken. WCC also stated that Mr. Weidner would do the work himself but had lost his tools, and authorized Madere, or anyone else, to remove the hoses and the electrical line.

19.

On October 29 and 30, 2026, Madere's crew found oil residue throughout the barge's deck and, on opening the first of WCC's lines, found them full of oil. The crew stopped work and cleaned the deck. The lines cannot be safely removed by McDonough or its contractors. McDonough anticipates being charged for Madere's time and other expenses involved with the voyage.

20.

WCC has not drained or disconnected its lines or readied the barge for transit, despite McDonough's further demands on November 2, 4, and 17, 2026. The barge remains connected to WCC's wellhead and equipment.

21.

WCC breached the master agreement and the charter order by failing to pay hire (Article 2); failing to procure the required insurance and furnish certificates of it (Articles 7(B), 7(C), and 7(F)); failing to keep the barge free of oil (Article 4(D) and the Wear and Tear Addendum); and failing to redeliver the barge at its own cost to McDonough's Venice fleet in the condition in which it was delivered (Articles 4(A), 4(B), and 18).

22.

Charter hire continues to accrue at the charter rate, plus applicable tax, until the barge is returned to McDonough in the condition in which it was delivered. Article 4(D).

23.

WCC owes every cost McDonough incurs to retake the barge and restore it, including disconnecting and draining WCC's lines, cleaning the barge, towing it to McDonough's Venice fleet, an off-charter survey, and any repairs beyond ordinary wear and tear. Articles 4(B), 4(D), 14.

24.

Because WCC did not procure the required insurance, it must indemnify McDonough as though that insurance were in place. Article 7(E). WCC also must defend and indemnify McDonough against any claim, cleanup cost, fine, or penalty arising out of WCC's use of the barge, including any arising from the oil in WCC's lines or on the barge's deck. Article 8.

25.

The master agreement, Article 2(B), requires WCC to pay interest at 1.5% per month beginning 30 days after the due date of each invoice.

26.

The master agreement, Article 16(B), entitles McDonough to recover its reasonable attorney's fees,

expenses, and costs in the event McDonough retains counsel to collect sums due or to recover its barge. McDonough has done so and is entitled to its attorney's fees, expenses, and costs.

27.

Article 4(A) of the master agreement obligates WCC, at its sole cost, to redeliver the barge to McDonough's Venice fleet. Redelivery requires that WCC's flowlines, hoses, and electrical cable be isolated, drained, disconnected, and removed from the barge.

28.

Those lines, and the oil in them, belong to WCC, which is the operator of record of the wells they serve. Purging and securing the lines, and handling and disposing of the fluids in them, are the operator's obligations under the rules of the Louisiana Office of Conservation, including Statewide Order No. 29-B. McDonough cannot perform them in WCC's place without exposing itself to claims by WCC and others interested in the wells and their production.

29.

McDonough seeks a preliminary injunction under Fed. R. Civ. P. 65(a) ordering WCC, within ten days, to isolate its lines at the platform and wellhead; to drain, disconnect, and remove

its hoses, flowlines, electrical cable, and other equipment from the MCD 355; to remove all oil and oily residue from the barge; and otherwise to prepare the barge for transit.

30.

McDonough is likely to succeed on the merits. The charter is in writing and unambiguous; WCC has never disputed the hire invoiced; and WCC has admitted, through counsel, that McDonough is entitled to take the barge.

31.

WCC is the only party that can safely do this work. WCC connected the barge to its platform and wellhead. As operator, WCC alone knows how the barge is tied into its production system, which valves isolate the lines, whether the wells are shut in, and what is in the lines and at what pressure. WCC's own description of the lines on October 28 proved wrong when Madere opened them and found them full of oil. Anyone other than WCC must work blind on another operator's producing equipment.

32.

Without an injunction, McDonough and the public face irreparable harm. The barge sits in the open waters of Breton Sound, tied to a producing wellhead by lines charged with hydrocarbons, and its deck has already been fouled with oil. Any parted line, failed connection, or storm can discharge oil into the Sound. That harm is not economic and cannot be repaired by a money judgment: "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987).

33.

The harm also falls on McDonough in a way no judgment against WCC will cure. As owner

of the barge, McDonough may be named a responsible party for any discharge from it, 33 U.S.C. §§ 2701(32)(A), 2702(a), and WCC never procured the pollution insurance the charter required to answer for one.

34.

WCC will not act without an order. Since July 2026, WCC has failed to answer McDonough's request for what was needed to disconnect the barge; failed to make the purchase decision it promised within two weeks; failed to make the offer it promised by a date certain; failed to have the barge ready for redelivery when told to; misdescribed the condition of its own lines; and, though it said Mr. Weidner would do the work himself, has done none of it in the three weeks since. Each time, WCC has said what it would do and then not done it.

35.

The balance of hardships favors McDonough. The injunction would require WCC to do only what the charter already obliges it to do, and what WCC itself said it would do. WCC has no legitimate interest in keeping McDonough's barge connected to its production while paying no hire and carrying no insurance.

36.

The public interest favors an injunction that removes the risk of an oil discharge into Louisiana's coastal waters.

37.

Because the injunction would require WCC only to perform its own contractual obligations, security under Fed. R. Civ. P. 65(c) should be nominal.

**Prayer**

Wherefore, McDonough prays that, after hearing, the Court issue a preliminary injunction

ordering WCC Energy Group LLC, within ten days, to isolate its lines at the platform and wellhead; to drain, disconnect, and remove its hoses, flowlines, electrical cable, and other equipment from the MCD 355; to remove all oil and oily residue from the barge; and otherwise to prepare the barge for transit, upon nominal security; that, if WCC fails to comply, the Court order under Fed. R. Civ. P. 70(a) that McDonough's contractor perform those acts at WCC's expense; and that, after trial, McDonough recover from WCC unpaid charter hire through the date of this complaint, plus hire accruing until the barge is returned in the condition required by the charter; all costs of retaking, disconnecting, draining, cleaning, towing, surveying, and repairing the MCD 355; a permanent injunction and specific performance to the same effect as the preliminary injunction; defense and indemnity for any claim, cleanup cost, fine, or penalty arising out of WCC's use of the barge; interest at 1.5% per month beginning 30 days after the due date of each invoice until paid in full; attorney's fees, costs, and expenses; and whatever other just or equitable relief this Court finds appropriate.

DATED: November 18, 2026

Respectfully submitted:

BOHMAN | MORSE, LLC

*/s/ Harry E. Morse*
HARRY E. MORSE (#31515)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (
504) 930-4009
FAX: (888) 217-2744
E-MAIL: HARRY@BOHMANMORSE.COM

*Attorney for MARMAC, LLC d/b/a McDonough Marine Service*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MARMAC, LLC<br>d/b/a MCDONOUGH MARINE SERVICE<br><br>VERSUS<br><br>WCC ENERGY GROUP LLC | CIVIL ACTION NO:<br><br>DISTRICT JUDGE<br>HON.<br><br>MAGISTRATE JUDGE<br>HON. |

**VERIFICATION**

I, Craig W. Brewer, am the Senior Counsel & Risk Director of MARMAC, LLC, doing business as McDonough Marine Service. I have read the foregoing complaint. The facts alleged in it are true and correct, based on my personal knowledge and on the business records of McDonough Marine Service kept in the regular course of its business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the date below at Metairie, Louisiana.

Date signed: 11/17/2026

Signed by:
Craig Brewer
ADC52412A3744BA
CRAIG W. BREWER